IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHARLES DAVID UTTER, #291500 * <br> Plaintiff, <br> v.                                                                 * CIVIL ACTION NO. JFM-09-820 <br> <br> WARDEN CATHLEEN GREEN                      * <br> SGT. KING, 3 TO 11 SHIFT <br> Defendants.                                            * <br> **** | |

MEMORANDUM

This 42 U.S.C. § 1983 action, originally filed in letter form and supplemented pursuant to court order, claims that on February 25, 2009, plaintiff's cell in Unit 8 at the Eastern Correctional Institution ("ECI") was shaken down and property taken. Plaintiff alleges that he twice requested a confiscation notice, was cuffed with his hands behind him, and defendant King "jerked me up in the air behind me, as he pushed me down a flight of steps." Paper No. 1. He states that King kept him from falling by jerking up on his arms "as he pushed him into a clerk's office." Plaintiff claims that his right shoulder was hurting and his initial request to be taken to the medical department was refused. He states that he was taken to the dispensary the following morning and given an ice pack and Motrin for his shoulder. Plaintiff complains that he has filed a number of medical requests to be seen for his shoulder, but "none of the requests seem to be making it to medical."[1]

Plaintiff further complains that when first released from the medical department he was taken to the west compound of ECI. He states that he informed Lt. Burkett that he could not be housed there because he had enemies on the west compound. When his claim fell on deaf ears, he alleges

---

[1] In his supplemental complaint plaintiff asserts that his shoulder is not getting better and the medical department has put him on Naproxren twice a day and is now stating that he may need shoulder surgery. Paper No. 4.

that he was given an adjustment for refusing housing. Plaintiff seeks damages and to have King removed from his job.

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment, which shall be treated as a summary judgment motion. Paper No. 18. Plaintiff has filed an opposition response. Paper No. 27. The case is ready for the court's consideration and may be determined without oral hearing. *See* Local Rule 105.6. (D. Md. 2009). For reasons to follow defendants' motion shall be granted.

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to...the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In their dispositive filing defendants raise boilerplate failure to state a claim and summary judgment arguments. They further argue that the complaint and record show that plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a).

Plaintiff has raised several constitutional claims respecting confiscation of property, excessive force, denial of medical care, and failure to protect. In his supplemental complaint he affirms that he did not file a remedy because the complaints never "leave the prison to the warden and she dismisses them." Paper No. 4 at 3. The ECI Administrative Remedy Coordinator confirms that plaintiff has not filed any Administrative Remedy Procedure ("ARP") grievances at ECI in 2009, and the Executive Director for the Inmate Grievance Office ("IGO") also affirms that plaintiff has not filed any grievances with the IGO in 2009. Paper No. 18 at Exs. 13 & 14.

In his opposition, plaintiff claims that King has never liked him and has locked him in his cell on repeated occasions because he is the "house informant" that "got one of his officers fired." Paper No. 27. He provides particular information about an ECI officer allegedly involved in inmate gang activity. Plaintiff also attempts to expound on the background of events leading up to the incident of February 25, 2009, and again discusses his cell shakedown, the confiscation of cell property, King's use of force, his receipt of medical attention the following morning, his refusal to be assigned to west compound housing and his receipt of an adjustment. He now alleges that that he was assigned to lock-up for thirty days and returned to Unit 8 on August 24, 2009.

Plaintiff acknowledges that he did not file ARPs against King, but claims the "in house record" will show that King has been written up more times that he has and treats inmates poorly and "gets away with it" because writing him up would "just get dismissed by Warden Green without any question ask[ed]."[2] Paper No. 27.

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Exhaustion under 42 U.S.C. § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

This action falls under the exhaustion prerequisites of § 1997e(a), and plaintiff's claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. June 2, 2004) (per curiam).

---

[2] Plaintiff alleges that he suffered a shoulder sprain from King's actions and does not have a full range of motion of his shoulder. He claims that medical staff are now saying that he may have bursitis and suggests that it is being employed as a convenient diagnosis to explain his injury from the February 25, 2009 incident.

The Maryland Division of Correction provides for a grievance process.  As noted under *Chase*, a Maryland inmate may satisfy exhaustion by seeking review of an ARP denial from a warden to the Commissioner and then appealing the Commissioner's decision to the IGO, the *final level* of appeal within Maryland's administrative grievance system for prisoners.  *See Chase v. Peay*, 286 F.Supp.2d at 529 (emphasis added).   Plaintiff does not refute defendants' assertion, supported by declaration, that he failed to exhaust his administrative remedies as to the claims raised in this complaint. Plaintiff has plainly failed to satisfy exhaustion requirements and has not shown that defendants have legally given up their right to present this affirmative defense.[3]

For the aforementioned reasons, the case shall be dismissed for the failure to exhaust available administrative remedies.  Defendants' motion for summary judgment shall be granted.  A separate order effecting the rulings made in this opinion is entered herewith.


Date: December 10, 2009                      /s/
                                             J. Frederick Motz
                                             United States District Judge

---

[3]  This court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).  There is no allegation here that plaintiff, through no fault of his own, was prevented from availing himself of the ARP process. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).